We'll move to our next case which is Davis v. Moroney. Mr. Maneghini. Good morning, your honors. May it please the court. Michael Maneghini on behalf of plaintiff appellant Michael Davis. This court should vacate and remand for two minutes. Mr. Davis is entitled to relief under rule 60b-6 because the process that resulted in the judgment against him was infirm. He was a pro se prisoner who was denied appointed counsel but who had severe mental and intellectual disabilities that allowed him to be taken advantage of by the inmate writers from whom he sought assistance. There were also periods of delay in an activity in the case and a lack of guidance from the district court both of which also contributed to Mr. Davis's procedural lapses. These are extraordinary circumstances of warranting relief under rule 60b-6 and certainly no less so we think than this court's decision in Donald v. Cook County. You're not appealing though on his failure to have appointed counsel are you? No your honor not directly but that that is one one circumstance that Mr. Davis faced and why he is entitled to relief under 60b-6. Well the main is this in fact the sole issue here was his failure to respond to interrogatories right? That's what ultimately led to the dismissal. So you got one issue is he gets interrogatories he's told he has to respond by a certain date and he doesn't do it. What were those interrogatories? Your honor the interrogatories were exhaustion interrogatories. For what? Exhaustion interrogatories to see if he had exhausted his administrative remnant the grievance process and so they were they were seeking information. Well there's a there are records of that aren't there? Yeah. Why were they asking him? Your honor I don't know they were in his complaint and attached to a complaint the exhibits A through G were all he laid out the grievance process the procedure and everything so they were in the record. Again they propounded these discovery requests on him again Mr. Davis pro se with severe intellectual disabilities that perhaps didn't understand. I guess my point is even given his IQ if you accept that this was two different levels he was given here are questions answer them by a certain date. He can't figure that out? Well you're saying he answered them. He had answered them. Your honor I'm saying they were answered they were in the record and perhaps and to your question he alleged that he couldn't figure that he didn't understand when he got the legal papers he didn't know what to do. He had the inmate quote lawyer close quote help him in something didn't he? He did have inmate writers helping him at various points. He did not he was not able to complete any legal papers on his own so he had inmate writ writers at various points helping him. Apparently the the initial inmate writ writer alleged who helped him with a complaint alleged that because he helped him he was in he was sent to segregation and couldn't help him and then so in his 60 v 6 motion what what he he tells the court is part of the issue is these inmate writ writers who I am entirely dependent on who have to help me at every single stage in every turn but they just wanted money from me and so they wouldn't do anything until I paid them but when I paid them they stopped. They wouldn't help me anymore because they got their money and so that is one of the issues that Mr. Davis raised in his 60 v 6 motion that we think is part of the extraordinary circumstances here that that warrant relief. And additionally your honor so in addition to his pro se status his IQ mental and intellectual disabilities his situation with the inmate writ writers who it's entirely dependent on there's also these periods of delay and activity in the case and also just a lack of guidance from the district court here. I think this court has been clear in some of its decisions in Donald and also more recently in Beale v. Foster where this court has said that it's incumbent on district courts and it's a duty to to help pro se litigates and to provide some guidance and assistance along the way trying to navigate a difficult legal process. Sounds a lot like a civil Gideon right? We haven't gone that a civil Gideon right a right to appointed counsel at public expense in civil cases right? No your honor we're not asking for an automatic right here or that civil litigants aren't entitled as a matter of right and we don't think that this court would have to hold so it can be it's it's a very narrow issue here with these these under these facts in these circumstances and if the district judge determines that a civil litigant is is capable of handling their case to a certain degree and can't has effective communication and verbal skills and understanding there still can can help even though the the civil litigant maybe doesn't need counsel of they could still help them a lot with some of the procedural. If the if the district judge had asked Winston and Strawn could they provide a lawyer for him in the in the district court would Winston and Strawn have said okay? Perhaps we I think this is an essential issue we don't we don't practice down there but I'm sure there are law firms there are. Well I was thinking specifically firms like Winston and and the other big firms in Chicago are they willing to lend say a very junior lawyer to help a what is otherwise a pro se? Yes your honor I think they are and I can I can only really speak for Winston here but I know Winston has a robust pro bono program and we do are often appointed by by courts and we do take them. I assume that's what you're doing now. Yes and so we do Winston does actively promote to try to get young associates supervised by a partner so I there are law firms. In the trial courts? I'm sorry? In the trial courts or on appeal? At all levels. I would think the firm would benefit from having young associates get some trial experience. Yes your honor and that's that's that's Winston's view of it as well and so again we do think there are various avenues where a court can appoint a counsel to assist an inmate such as Mr. Davis who has alleged very severe limitations and even if they don't and even if it doesn't rise to that level where you know we don't need appointed counsel perhaps at this stage maybe a later stage we'll revisit it the district court should still kind of help help the pro se litigant along and make sure they're they're they're understand what's going on and they're properly engaging with the legal process and not just this this was answer the interrogatories within certain number of days that was it right yes your honor that's what ultimately led that's not what what it what the court supposed to say beyond that your honor it was clear but I think there's some back and forth here that was going on throughout this period where mr. Davis was was filing a motion it was getting rejected very in a very cursory fashion he was then responding to whatever deficiency he thought he was doing kind of what he needed to he's trying to get appointed counsel he was trying to tell the court that that I need help I don't know what I'm doing like I I really need help here and he was trying to respond to whatever deficiency the court pointed out and denying his previous motion he would try to address that in the next one and so and so this was his way of prosecuting his case was trying to get help he was he wasn't just neglecting his case he was trying to file papers he's simply in the court's view was just missing the mark here without any assistance and he has an IQ of 73 I he was just 66 your honor 66 yeah now what what kind of educational background does he have you already go in school and how far did he go in school yeah it's not in the record but he does allege that he has a he reads at a sixth grade level so he say reads sixth grade we let read a six-way sixth grade level was another allegation that he made in needing counsel mr. Mangini yes is do is there does anybody have any medical records indicating severity of injuries in this encounter with mr. Maroney no you're under there's no medical records in the record mr. Davis wanted to get them in the record he alleged that he had submitted the the release form that he needed but the institution wasn't given to them so he in one of his motions he asked the court for help you know obviously it was he treated medically after the attack that he alleged it does I think the records unclear or whether he was he was treated for that here's here's my concern because we can we might be able to send this back and say in essence try again give him some more help perhaps your firm would would provide that assistance but ultimately this is going to come down to I would think his testimony and mr. Maroney's testimony plaintiff's own account says that he's paranoid and delusional it's hard to see a lot of traction in this case well I think that this was this past merit review this was what that means is that the allegations framed by the writ writer in prison who was helping mr. Davis state a claim for relief okay right nothing more than that yeah but I think it doesn't mean that there is merit in the case but it at least entitles it to proceed and to get to the point where to get through the we think at this stage there's merit it certainly could go to a jury jury could find that there was based if it's just competing testimony the judge or the jury could listen and hear the witnesses and without medical treatment and with the testimony of somebody who describes himself as paranoid and delusional your honor I think that just goes to that go to credibility then the witness which which is that are those factors that you think a district judge is prohibited from considering and deciding whether to recruit counsel no yeah I don't think that the judge would be prohibited and I don't think so either in considering it but I think the judge should certainly do more than what happened here I think there was there was no consideration at all it was it was just a very cursory eighth amendment excessive claims are not unduly complex didn't really address mr. Davis personally never had any kind of status hearing a conference call to really even engage and understand you know and listen to him and see you how you know whether or not he was individually able to to prosecute his case did you say there was no oral hearing no she she never she never listened to him from the record it doesn't appear that there was ever a hearing that require him being taken out of prison brought to the courthouse not necessarily could do by spike by phone iPhone yes I think there's a local rule in the Central District that says with pro se inmates they will hold status status conferences by phone and I think it's other other judges within the circuit district judges do hold phone phone conferences or video conferences with inmates while they're still in their detention facilities so there's no further questions okay well thank thank you very much mr. managini miss hunger may it please look may it please the court assistant attorney general Sarah hunger on behalf of Appley Donald Maroney and this court should affirm the district court because it did not abuse its discretion in denying Davis's rules why did the judge find a lawyer for this guy he's totally incompetent the district court did not abuse its discretion and well I don't agree with you if you have someone who is it's a serious case who is incapable of representing himself shouldn't the judge recruit a lawyer for no big deal the district court here was looking at the entirety of the record oh the entire you're repeating that but is it true that he that the judge the judge never never heard from him that is never never had a hearing to evaluate his competence the district court never had a hearing of council issue the district court is not why not I don't know why the district court did not hold a hearing well you think it was a good idea not to hold a hearing I do not think at that time a hearing was necessary why because how could you evaluate this guy without meeting him well because he heard from him he had put into the record that he had a paranoid delusional disorder that he had an IQ of 66 that he could read at the sixth grade yes well wouldn't it be well did Judge Darragh accept all those statements it appears that the district judge did accept all of those statements well if she did that a guy with an IQ of 66 well the district trying to conduct the trial without a lawyer that's ridiculous the district court held at this stage it was not necessary here at this stage the stage is over he's lost his case at that stage no further stages for him to have a hearing that's correct but if if he had complied with the interrogatories he would have proceeded dope I mean how is he how can you how can you say that his failure to comply with the interrogatories is some willful refusal to cooperate with the with the with the government well I think there's a few reasons why I don't know what an interrogatory did it did the district court ask him to contact a lawyer to see to take a case did the district court suggest not suggest telling to find a lawyer if he could yes that was in the first and second denials of his motion find a lawyer well it shows in his log that he did reach out to several attorneys so he did make attempts both to smaller law firms and larger law firms in order to get counsel so he was making those efforts he was responding yes I know but imagine what he sounds like when he's talking to a lawyer and asking for help even if the district difference for it would make a big difference if the judge called up a law firm and say you have this guy who's brought a suit and he seems to have serious psychiatric and IQ issues could you could you know a lend lend him a lawyer that could have an effect I think law firms will treat a request by a federal judge seriously but if this guy just calls up and starts raving he's not going to get a lawyer I don't understand why judges don't don't why judges are so hesitant to ask for a lawyer try to recruit a lawyer for someone who is obviously incapable of representing himself well here the district court stated that it was a he said she said case that was not very complex so he did know he did advise the court that he tried to get lawyers and was able to do so that's correct so the judge so there was a back-and-forth between Davis and the court. And what did the court tell him after he advised him that he couldn't find any? well then the court moved on to the second Pruitt inquiry and held that although he had satisfied the first Pruitt inquiry the case was not so complex that he needed an attorney because it was something there is case law that says he has to find he has to inquire try to find a lawyer on his own before the court does. That's correct and so so that the district court said you know he had to show that he had attempted to find a lawyer. You can't separate the simplicity of the case from the simplicity of this guy. The law of the case may not be complex to an ordinary person with an IQ of a hundred say but may be totally beyond the capacity of a person of this of this level of intelligence to handle. And that may be. I don't think that would be so obvious to a judge. That may be true but here also that question is not before this court because this court only has appellate jurisdiction over the denial of the rule 60b motion which relates exclusively to interrogatories not to the underlying issues as to whether or not he should have had a lawyer recruited for him. So here. They're all connected though. I don't know about you I don't think I'd ever heard of an interrogatory until law school civil procedure class. And as simple as it might be to simply have to have two people come in and give testimony about this incident or maybe several people give testimony about it. The process of complying with these sorts of orders in the pretrial process can be pretty daunting. It can be. Here though he was sent to the interrogatories in March of 2014. Then the assistant attorney general followed up with a letter further explaining what he needed to do. Then the court issued an order to compel compliance with the interrogatories. Do we know if he understood any of those communications? It's not in the record whether or not he understood them. Suppose he were blind and he was getting all these records all these orders and interrogatories in the mail. He can't read them? He has to pay somebody to read them? Well I suppose that would go to the assistants that he was receiving at the prison whether or not he was able through the court system and the prison system to get a copy that he could read or otherwise understand. Here though I'd also like to point out something about the grievances. Counsel said that Maroney had already received all the grievances as they were attached to his complaint but that's not true. The only timely grievance that Davis alleged that he filed was on July 21st 2012 and then he filed I think an additional three grievances. That first grievance the July 21st 2012 is the only grievance that's omitted from the complaint. It is not attached. So that is why Maroney was asking for that document or for any other letters or any other type of way that he could have exhausted. You have to ask. And you know had he responded and said I don't understand what this document is I don't I have no idea what they want from me then we'd be in a different situation but he did not respond at all. It is incumbent upon him and he had the assistance of inmate writers at this very time. Isn't he responding though in essence by saying please help me get a lawyer? He's responding by saying please help me get a lawyer but it's not tied at all to these interrogatories. Do you know how the not compensated or by the court if they had been recruited attorneys or? By the court or from the from any recovery that they received. Right. Here it is a 1983 action so they could be compensated for costs and fees if they if they had been recruited. So when you make the inquiry about taking the case a reasonable lawyer would evaluate whether or not they had a chance of recovering. That's correct. Otherwise they would be taking it for nothing. Right. They're not being appointed by the court rather. They're being recruited. They have to take it on the basis that they'll be recovered from the successful lawsuit. Right that's correct. Was Mr. Meneghe correct when he said that the information asked for in the interrogatories was actually in his complaint? No he was not correct about that. So the grievance that would have been timely filed as it related to the incident was not attached to the complaint. Other grievances were attached to the complaint. So there was this conspicuous omission. Does the defense have that original grievance? I am not sure if the defense has that original grievance. It may but the important thing here is that it was asked that Maroney was asking for any copies that Davis would have. Sure but and I understand why you have to ask but given that the prison presumably knows what it has right? Right and I am not sure here it's not in the record whether or not the prison did look through its documents. Did what? Did the prison what? Looked through its documents before it reached out to Mr. Davis. Presumably it did and it did not find anything. You know here it seems that Davis did maintain his records. Well I don't understand. How would he be expected? How would Davis be expected to respond to the interrogatories if the prison had no information? Well Davis would be expected to respond with either a copy of that initial grievance which would have been the only timely grievance on this issue or he would have responded with perhaps other efforts that he made to exhaust the administration. Yes but the grievance had been given to someone hadn't it? Yes but. Wasn't it in the prison files? It's not in the record. Well why not? You just throw this stuff away? Someone files a grievance and you just toss it? No this is just part of the discovery process. Well why don't they have the grievance in their files then? Well if he didn't actually file the grievance then they wouldn't have it in their files and so they would ask for it. Otherwise. So you say he didn't file a grievance? I'm saying he may not have filed a grievance. He may have filed a grievance. Well did anyone ask the prison whether they had a grievance from him? It's not in the record whether or not. Well he didn't. Well I don't understand that. Why wouldn't that be the obvious thing to do to find out where is this? Well that is one way that the prison could have done this is look through its records and just move for summary judgment immediately. Well the other way asking him is not the best. I don't understand it. Why do you ask this very damaged person for a piece of paper which presumably is in the prison's files? Well because otherwise Maroney would have been moving with incomplete information. Just moving for summary judgment. Not if the complaint is in the prison files. Which you don't know. Apparently no one looked. No one cares. Did anyone look for it? I do not know if anyone at the trial level looked for it. Yeah well that's bad. It was not in the motion to compel but Maroney was well within his rights to ask Davis for this information before proceeding to summary judgment. Wait Maroney works for the prison right? Yes. Well isn't it his responsibility to find out what he can within the prison? Presumably his access to their files. Within the context of the scheduling order that was set forth it was going to be before the case was dismissed incumbent upon Maroney to look through his files. The orders to compel were entered before that. And so prior to proceeding for summary judgment on the issue of exhaustion. Well did he eventually look through the files? I'm not certain whether he did. The case was dismissed and so he never had to comply with the scheduling order related to the discovery requests. It never came to that in the case. If the court has no further questions we ask that it affirm the judgment. Thank you Ms. Hunger. Mr. Maneghini do you have anything further? Thank you Your Honor. If I could just make three very brief points here. First with respect to the missing grievance that the state now complains about. Two that would be in the state's records. Also in Mr. Davis' complaint he alleges that he gave that grievance to his grievance counselor and part of the issue is that she never processed and returned it. So we filed the subsequent grievances trying to get that. So that's part of his complaint allegations. And as the government also mentions once the scheduling order was entered the judge which entered to help facilitate the process with the pro se litigant which can be difficult said that it was the defendant's responsibility to turn over all the grievances and mental correctors. Second, I'd like to make the point that Mr. Davis was trying here. He was trying very hard to respond and to file papers. He was just simply missing the mark here. And the government said it would be different if he had responded to the interrogators that he didn't understand or didn't know what to do. In his rule 60B6 motion he did precisely that. He said I don't know what these are. I don't know what they mean. I don't know what to do with them. And finally with respect to your honest question about the fees and whether it's contingent with her appointed counsel. I know with a pro bono counsel at least with Winston our policy is we don't collect the fees. Well I don't understand pro bono. I'm not talking about pro bono. He's dealing with lawyers around the prison there and when they take the case the only way they're going to get recovery is if they win the case, right? If they were taking it on a contingent basis. Many firms take it on a pro bono basis. Well many firms like Winston and Strong, but I'm talking about the sole practitioner or the two or three person firm around the prison. They don't take cases just on the chance that they might win or they don't have a pro bono program like Winston does. I mean, yes, your honor, and maybe those firms would have different policies. And if they don't take the case then it falls on the court to appoint or not to appoint in this type of case, in a civil case. Yes, and that would fall on us. And then the taxpayers pay for it. I'm sorry? Then the taxpayers pay for it. If he can't find counsel. If a judge reaches out, I know our pro bono, we don't take it. No, I understand Winston's pro bono claim, which is admirable and many large firms in Chicago have it. But where the prisons are located, those are not available. And I'm not sure whether you send lawyers down all the way to say to Marion or other prisons in the southern part of Illinois to represent these people. I don't know. Maybe you do. Your honor, again, this was never, perhaps if the judge would have reached out, there are potential firms that would do this. Or again, being part of the trial bar is that you do get back. I understand what the requirement is. But I'm talking about those lawyers who happen to be practicing in areas where prisons are located and the ones apt to be representing defendants. Yes, your honor. Where is this prison? The prison? Where is it? Pontiac. I mean, where in Illinois? Pontiac. Where is Pontiac? Is it far? Yeah. Your honor, just the very last thing I'd like to say is just that my boss has said that Winston and Strong gladly take this case, an appointed pro bono basis on demand and would gladly for further proceedings. I'm sure you would take a pro bono, and that's admirable. But you don't want to be taking pro bono cases for every prisoner lawsuit in the state of Illinois, do you? No, you don't have to answer that. I don't think they'd like me to say that, sir. Thank you very much. Okay, thank you very much to both counsel.